FRANK "NITTY" SENSABAUGH,

        Plaintiff,           Case No. 2:20-cv-01502-LA

   v.

MICHAEL KRZNARICH, SARAH BYERS,
CORIE RICHARDSON, BRANDON ROGERS,
DANIEL HUMPHREYS, STEVEN HAW,
TRICIA CARLSON, JOHN DOES ONE
THROUHG TEN, JOHN DOES ELEVEN
THORUGH TWENTY, and MILWAUKEE
COUNTY,

        Defendants.

**BRIEF IN OPPOSITION TO DEFENDANTS' MOTIONS
FOR PARTIAL JUDGMENT ON THE PLEADINGS
BY PLAINTIFF FRANK "NITTY" SENSABAUGH**

NOW COMES Plaintiff Frank "Nitty" Sensabaugh ("Frank Nitty"), by his attorneys, the law firm of GINGRAS THOMSEN & WACHS LLP, by Attorneys Mark L. Thomsen and William F. Sulton and Scott B. Thompson, and submits this brief in opposition to Defendants'[1] motion for partial judgment on the pleadings as to Frank Nitty's fifth claim for relief against Defendant Carlson and his claim for injunctive relief against Defendant Milwaukee County. (Dkt. 10.)

---

[1] Neither the brief nor the motion specifies precisely which of the defendants filed the pending motion. Instead, these filing identify that they were brought on behalf of "defendants," generally. Without the ability to be more specific, and for consistency, Plaintiff Frank Nitty will use this general term to refer to the moving parties.

## I. INTRODUCTION

Frank Nitty's complaint adequately alleges facts that allow the Court to draw a reasonable inference that Milwaukee County authorized or ratified the shuttering of free speech on the Hoan Bridge by sheriff's deputies, when there was no unlawful assembly occurring. Frank Nitty is also entitled to seek declaratory relief regarding the unconstitutionality of the sheriff's deputies' conduct in this context, and to seek the remedy of an injunction to prevent future unconstitutional applications of policy. Finally, Frank Nitty has civil rights claims against individual sheriff's deputies, and these claims should survive regardless of municipal liability.[2]

## II. THE FACTS IN FRANK NITTY'S COMPLAINT

Frank Nitty is a well-respected Milwaukee human rights advocate. (Compl. at ¶¶6, 11, 26.) Frank Nitty is known for his peaceful advocacy and protests for racial and economic justice. (*Id.*, at ¶¶6, 26-28.) On July 11, 2020 the Wisconsin Senate issued a proclamation "recogniz[ing] and honor[ing] Frank Sensabaugh . . . a true pillar, role model, and voice of positivity in our community, and salute him for his greatness as a leader." (*Id.*, at ¶6.)

On June 1, 2020 Frank Nitty and dozens of other protesters were walking home from a peaceful march against police violence and racism near the intersection of North Port Washington Road and West Sliver Spring Drive in Milwaukee County. (*Id.*, at ¶¶30-31.) Law enforcement vehicles, including an armored vehicle, believed to be from

---

[2] Moreover, the plaintiff looks forward to developing the factual record, and allege that "County policy, widespread practice, or [a] policymaker caused the... violation of [Frank] Nitty's rights" (Dkt. 11, p.2) when he amends the pleadings on or before February 20, 2021. Dkt 12, p.3).

the Milwaukee County Sheriff's Office ("MCSO"), blocked the marchers' path. (*Id.*, at ¶¶32-33.) None of the protesters, including Frank Nitty, posed any threat to MCSO deputies. (*Id.*, at ¶36.) Despite this fact, MCSO deputies shot tear gas at marchers and rushed at them with batons. (*Id.*, at ¶34.) The tear gas was so thick and strong that Frank Nitty could not open his eyes. (*Id.*, at ¶35.) Frank Nitty experienced burning sensations in his eyes and throat and was coughing. (*Id.*)

On June 2, 2020 Frank Nitty and others peacefully marched up an open ramp on Interstate Highway 794. (*Id.*, at ¶38.) MCSO deputies met the peaceful marchers with Billy clubs, rubber bullets, tear gas and other weaponry. (*Id.*, at ¶39.) Prior to being attacked by MCSO deputies, Frank Nitty tried to move back off of the ramp. (*Id.*, at ¶¶41, 51.) Frank Nitty did not pose a threat to any MCSO deputy. (*Id.*, at ¶¶48-51.) Despite this fact, MCSO deputies pushed past white marchers and singled out Frank Nitty for arrest and violence. (*Id.*, at ¶¶41-47.) A MCSO deputy pointed a firearm at Frank Nitty at point blank range, he was body slammed, piled on and handcuffed so tightly that the circulation in his hands was being cutoff. (*Id.*, at ¶¶9-10, 46-47.) MCSO deputies took Frank Nitty to a hospital because of the severity of his injuries. (*Id.*, at ¶¶10, 57.)

Cpt. Carlson was responsible for the oversight and supervision of subordinate MCSO deputies, including Sergeant Michael Krznarich ("Sgt. Krznarich"). (*Id.*, at ¶¶18, 60, 98-99.) Cpt. Carlson was specifically responsible for directing and supervising the Mobile Response Team ("MRT"), which Sgt. Krznarich was commanding on June 2, 2020. (*Id.*, at ¶¶12, 18.) And Cpt. Carlson reviewed the events of June 2, 2020,

including Sgt. Krznarich's report and approved Sgt. Krznarich's conduct and report. (*Id.*, at ¶¶60, 99.)

Frank Nitty's complaint alleges that MCSO deputies were directly and actively involved in suspending the First Amendment over two days in June 2020. (*Id., at* ¶¶1-114.) Under the federal rules a complaint is required only to give the notice of the claim such that the opposing party may defend itself effectively. Fed. R. Civ. P. 8(a). There is no heightened pleading standard for establishing a Section 1983 claim. *Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014); *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). All that is required is sufficient facts, if established, would show "pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

## III. ARGUMENT

On May 25, 2020 George Floyd ("Floyd") was murdered by a Minneapolis Police Department officer during an arrest for a nonviolent crime. (Compl. at ¶3.) Nationwide protests erupted in response to Mr. Floyd's murder, including in Milwaukee. (*Id.*) Frank Nitty has been leading protests against police violence and police sponsored racism in Milwaukee on a daily basis since Mr. Floyd's murder. (*See, e.g., id.,* at ¶¶6-7.) Given the number of MCSO deputies and the scale of the MCSO's operations relative to Frank Nitty's protest activities, it is a reasonable inference from the complaint that the County was aware of Frank Nitty, his activities and the MCSO's responses.

### a. Legal Standard Applicable to Motions for Judgment on the Pleadings.

This case is still at the initial pleadings stage. *See, e.g., Taylor v. JPMorgan Chase Bank*, No. 17-3019, at *29 (7th Cir. Apr. 30, 2020) ("This case is old but still at the pleadings stage."). While Rule 12(c) provides for summary disposition of a party's claims after the pleadings have closed, "[a] Motion for Judgment on the Pleadings is generally not favored and courts apply a fairly restrictive standard in ruling on the motion." *Fox v. Terre Haute Indep Broadcasters, Inc.*, 701 F. Supp. 172, 173 (S.D. Ind. 1988). Thus, judgment on the pleadings should be granted only if it is "beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Thomason v. Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir. 1989). And the court must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to Nitty. *Gustafson v. Jones*, 117 F.3d 1015, 1017 (7th Cir. 1997).

A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *See Buchanan-Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). As such, a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v Twombly*, 550 U.S. 544, 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.,* 880 F.3d 362, 366 (7th Cir. 2018) (*quoting Iqbal*, 556 U.S. at 678). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is

entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). "A motion for judgment on the pleadings is reserved for self-defeating complaints. . . . [And] is not the time for a defendant to press its defenses, unless the pleadings themselves show that the defense is a clear-cut, cut-and-dry, knock-out winner with no way out for the plaintiff." *Ruebe v. PartnerRe Ireland Insurance DAC*, No. 18-cv-01192, at *21-22 (N.D. Ill. July 2, 2020).

At this early stage, courts are instructed to "constru[e] the allegations in the light most favorable to [the plaintiff], accepting all well-pleaded facts as true, and drawing all reasonable inferences in favor of [the plaintiff]." *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013). Ultimately the standard governing sufficiency of the pleadings is a "low bar." *Alexander v. United States*, 721 F.3d 418, 425 (7th Cir. 2013).

This suit is authorized under 42 U.S.C. § 1983. The statutes drafter's explicitly encouraged courts to apply the statutory framework broadly, in favor of claims arising thereunder. As our United States Supreme Court acknowledged, Representative Samuel Shellabarger, an Ohio Republican, testified precisely to that effect, explaining "[t]his act is remedial, and in aid of the preservation of human liberty and human rights. All statutes and constitutional provisions authorizing such statutes are liberally and beneficently construed." *Owen v. Independence*, 445 U.S. 622, 636, 100 S. Ct. 1398, 1408, 63 L.Ed.2d 673, 684 (1980) (internal quotations omitted). Representative Shellabarger continued, "the largest latitude consistent with the words employed is uniformly given in construing such statutes and

constitutional provisions as are meant to protect and defend and give remedies for their wrongs to all the people." *Id*.

### b. Frank Nitty's complaint successfully alleges that Milwaukee County ratified its deputies' unconstitutional conduct.

This case concerns a massive mobilization of MCSO deputies that unconstitutionally infringed on the First Amendment and Fourth Amendment rights of Frank Nitty and other members of the public. The facts of the complaint afford Plaintiff the inference that the County, responsible for any policy maker for the MCSO, was involved in coordinating the MCSO efforts on June 1, 2020 and June 2, 2020, or, that Captain Carlson's position of power sufficed to bring the instant claim as a result of her conduct. Accordingly, Frank Nitty adequately alleged a claim for municipal liability.

The sweeping coordination and breath of this unconstitutional program give rise to the reasonable and clear inference that the program itself was ratified by the County policy maker or otherwise resulted from the County's behavior. The program here was a staggering intrusion into the essential civil rights of Milwaukeeans in general, and Frank Nitty in specific. The facts alleged in the complaint provide the "reasonable inference" that the County set this unconstitutional deprivation in motion.

For nearly one hundred years the Supreme Court of the United States has specifically identified the streets of our nation as the appropriate locus for political commentary and advocacy. "The privilege of a citizen of the United States to use the streets and parks for communication of views on national questions may be regulated

in the interest of all; it is not absolute, but relative, and must be exercised in subordination to the general comfort and convenience, and in consonance with peace and good order; but it must not, in the guise of regulation, be abridged or denied." *Hague v. Committee for Indus. Org.*, 307 U.S. 496, 500, 59 S. Ct. 954, 957, 83 L. Ed. 1423, 1429, 1939 (U.S. June 5, 1939).

When Frank Nitty led other Milwaukeeans to "the streets and parks for communication of [their] views" the MCSO responded with a clearly orchestrated attack. Repeatedly, mass mobilizations of MCSO forces violently disrupted and attacked Frank Nitty and others. The complaint alleges that, day after day, the MCSO forces blockaded roadways and attacked peaceful demonstrators. As the complaint sets forth, MCSO armored vehicles, poison gas, and billy clubs kept Frank Nitty and his fellow patriots from employing their rights as citizens.

In a brazen rebuke of the First and Fourth Amendments, as well as other Constitutionally guaranteed rights, Defendants now assert these facts do not offer a sufficient basis to hold the County liable. This is virtually preposterous. For municipal liability, the "critical question [remains]: is the action about which the plaintiff is complaining one of the institution itself, or is it merely one undertaken by a subordinate actor?" *Glisson v. Ind. Dep't of Corr., 849 F.3d 372, 381* (7th Cir. 2017). This critical question resolves unquestionably in Frank Nitty's favor, *especially* at this early stage of the proceedings.

A review of the complaint confirms that the allegations here are not "merely… undertaken by a subordinate actor." High ranking members throughout the force,

including sergeants and captains, directed and oversaw the violence on the day of the attack itself. (Dkt. 1-1 ¶¶30-62). The attack required massive armored vehicles, chemical weapons, billy clubs, and the blockage of major Milwaukee thoroughfares – all undertaken by the MCSO. This was not a discrete action by a subordinate actor, the complaint alleges a comprehensive and unconstitutional program set in motion by the County.[3]

Of course, Milwaukee County is a proper target for this claim. *Monell* teaches that "Congress did intend municipalities and other local government units to be included among those persons to whom § 1983 applies." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, 98 S. Ct. 2018, 2035, 56 L.Ed.2d 611, 635 (1978). The real party in interest for any *Monell* claim is the relevant municipal entity. *Wilson v. Civil Town of Clayton*, 839 F.2d 375, 381-82 (7th Cir. 1988). In these claims (including the instant one), policy makers, i.e. officers of the municipal entity, are agents of the municipality itself. *Id*. Thus, to the extent that any claim exists against a policy making official, the "action operates as a claim against the Town itself." *Id*. at 382. Here of course, this means that the conduct of Milwaukee County's policy makers are properly alleged against Milwaukee County. Again, the factual allegations of the claim suffice to infer that it was indeed the County who provided the driving force behind the unconstitutional program that targets Frank Nitty.

---

[3] At the very least, at the initial pleadings stage, the facts alleged in the complaint afford Frank Nitty the inference that this is precisely the type of municipal violation subject to liability under *Monell* and its progeny prohibit.

Furthermore, and as Milwaukee County recognizes, ratification may provide an adequate basis for liability under 42 U.S.C. § 1983. (Dkt. 11 at 9-10.) In *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988), the U.S. Supreme Court explained:

> when a subordinate's decision is subject to review by the municipality's authorized policymakers they have retained the authority to measure the official's conduct for conformance with *their* policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.

*Id.*, at 127. The Supreme Court labeled the above statement as a guiding "principle." *Id.* Thus, when a complaint alleges that a supervisor has authorized or approved of unconstitutional behavior a claim exists as a result of such authorization or approval. *See Hampton v. Hanrahan*, 600 F.2d 600 (7th Cir. 1979), rev'd in part, 446 U.S. 754 (1980). In *Hampton*, members of the state's attorney's office played an integral role in planning a police raid that resulted in a civil rights claim. *Hampton*, 600 F.2d at 605-07. *Hampton* reversed directed verdict in favor of supervisors, ruling that supervisory liability was a jury question. *Id.* at 627.

In *Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464 (7th Cir. 2001), a case Milwaukee County relies on, the Seventh Circuit ruled that "by adopting an employee's action as its own (what is called 'ratification'), a public employer becomes the author of the action for purposes of liability under section 1983." *Id.*, at 469. Frank Nitty's claim for ratification liability is no different.

The complaint alleges Defendant Carlson was "responsible for the oversight and supervision of deputy sheriffs." (Dkt. 1-1 at 21). The complaint continues, alleging that Carlson herself reviewed and approved and ratified unconstitutional conduct.

(*Id.*). Accepted as true, these specific allegations and associated inferences establish liability of the County. This is more than enough for Frank Nitty to survive the "low bar" associated with the sufficiency of pleadings. *Alexander v. United States*, 721 F.3d 418, 425 (7th Cir. 2013).

Defendants' arguments to the contrary rely upon factual adjudication in Defendants' favor and a misapplication of the law. Such maneuvers are forbidden at this stage. *Buchanan-Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) ("[V]iew the facts in the complaint in the light most favorable to the nonmoving party.") Defendants contend that 1) plaintiff has not alleged Carlson was a final decision maker with sufficient knowledge of unconstitutional activity, and 2) that the timing of Carlson's ratification dooms Frank Nitty's claims. (Dkt. 11, p. 11-13). Both of these arguments fail.

As to the first, facts in the complaint provide an inference that Carlson was a decision maker. Again, it states that she was "responsible for the oversight and supervision of deputy sheriffs." In order to conclude that the complaint *does not* set forth that Carlson is a decision-maker, one must find no inference from this language whatsoever demonstrating Carlson's policy-making authority. Such a conclusion is impossible to reach unless the words "responsible," "oversight" and "supervision" are each and all extracted and ignored. Of course, this is impermissible at the pleadings stage, when all of plaintiffs' allegations must be accepted as true. *Buchanan-Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009).

The same can be said for the suggestion that Carlson had no awareness of unconstitutional activity. This contention is easily undone by reading the 60th and 99th paragraphs of the complaint. They establish that Carlson did in fact "review" and then "approve" unconstitutional conduct. (Dkt. 1-1, p. 16, 21). The only way to conclude (as Defendants do) that Frank Nitty never alleged Carlson knew of the unconstitutional conduct is simply to ignore this language. At the pleading stage, a plaintiff's allegations must be accepted as true. *Buchanan-Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). Thus, ignoring this language is forbidden and Frank Nitty's claims should survive.

Defendants' argument regarding the timing of the ratification also fails. Their entire argument hinges on a short passage from *Kernats v. O'Sullivan*, 35 F.3d 1171 (7th Cir. 1994). (Dkt. 11, p. 10). *Kernats* rejected the viability of a § 1983 ratification claim. Key to this rejection, the Court recognized that the municipal decision maker alleged to have ratified the question in conduct did not direct or approve the relevant unconstitutional behavior. *Kernats* at 1182-83 (7th Cir. 1994).

Unlike the claims in *Kernats*, (and as described in full above), municipal liability may be gleaned from the coordinated attack launched by the MCSO across Milwaukee on repeated days. Beyond the breadth of the conduct at issue, it is also clearly alleged that a decision marker, Carlson, oversaw and supervised the deputy sheriffs who perpetrated the unconstitutional violations. The reasonable inferences available to the plaintiff permit this Court to infer at the initial pleadings stage that Carlson's oversight and supervision extended to oversight and supervision of the

relevant unconstitutional behavior. The endorsement of this behavior was cemented by Carlson's approval of the relevant report. Unlike the *Kernats* plaintiff, Frank Nitty sufficiently alleges Carlson's involvement throughout the relevant violations. Once again, to conclude in any other fashion would require that his complaint be rewritten with the specific allegations of oversight and supervision by Carlson removed and their associated inferences ignored. Defendants are not entitled to make such factual conclusions at this stage. Accordingly, Frank Nitty's claims should survive.

### c. Frank Nitty has standing and the Court should order the injunctive relief requested in the complaint.

Defendants claim that 1) *O'Shea v. Littleton*, 414 U.S. 488, 94 S. Ct. 669, 38 L.Ed.2d 674 (1974) and its progeny render injunctive relief unavailable to Frank Nitty due to an alleged lack of standing, and 2) that federalism forbids the relief Frank Nitty requests. Each argument fails.

"When the government provides a forum for speech (known as a public forum), … the government ordinarily may not exclude speech or speakers from the forum on the basis of viewpoint, or sometimes even on the basis of content." *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1930, 204 L.Ed.2d 405, 415 (2019). When government programs or policies restrict or otherwise prohibit this right, future injunctive relief is a proper mechanism to address the resulting harms. *Hague v. Committee for Indus. Org.*, 307 U.S. 496 (U.S. June 5, 1939).

While isolated past wrongs cannot support prospective injunctive relief on their own, a series of such wrongs is evidence that "there is a real and immediate threat of repeated injury." *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974); *City of Los*

*Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (same). Article III demands neither precognition nor the "consummation of threatened injury" before a plaintiff may obtain preventive relief. *Blum v. Yaretsky*, 471 U.S. 991, 1000 (1982) (quotation marks omitted).

Defendants' argument on this point arises principally from a misreading and misapplication of *O'Shea* and its progeny. *O'Shea* determined Article III standing was unavailable to a class of plaintiffs who would, as a matter of fact, not face the future injuries they alleged in their complaint. The Supreme Court explained:

> In the complaint that began this action, the sole allegations of injury are that petitioners "have engaged in and continue to engage in, a pattern and practice of conduct . . . all of which has deprived and continues to deprive plaintiffs and members of their class of their" constitutional rights and, again, that petitioners "have denied and continue to deny to plaintiffs and members of their class their constitutional rights" by illegal bondsetting, sentencing, and jury-fee practices. <u>None of the named plaintiffs is identified as himself having suffered any injury in the manner specified</u>… Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects. Neither the complaint nor respondents' counsel suggested that any of the named plaintiffs at the time the complaint was filed were themselves serving an allegedly illegal sentence or were on trial or awaiting trial before petitioners

*O'Shea v. Littleton*, 414 U.S. 488, 495-96, 94 S. Ct. 669, 676, 38 L.Ed.2d 674, 683 (1974)(emphasis added). As this selection clarifies, the *O'Shea* plaintiffs had no standing *because* the allegedly deficient criminal procedure practices could only harm them in the event of a hypothetical future run in with the law.

Milwaukee County cites a string of similar cases in which plaintiffs alleged speculative contingencies, such as requiring plaintiffs to commit a future violation of

[14 / 18]
Case 2:20-cv-01502-LA   Filed 11/17/20   Page 14 of 18   Document 14

an unchallenged law. *Lyons*, 461 U.S. at 105-06 (the plaintiff would have to violate law, encounter police, be arrested, and either resist arrest or officers would have to disobey policy and put him in a chokehold); *Rizzo v. Goode*, 423 U.S. 362, 372 (1976) (plaintiffs would have to violate a law and encounter police); *O'Shea*, 414 U.S. at 496-97 (same); *Lopez-Aguilar v. Marion County Sheriff's Dept.,* 924 F.3d 375 (7th Cir. 2019); *Simic v. City of Chicago,* 851 F.3d 734 (7th Cir. 2017); and *Palmer v. City of Chicago,* 755 F.2d 560, 578 (7th Cir. 1985). As Milwaukee County points out, federal courts do not assume that plaintiffs will violate a law they do not challenge.

Those cases are irrelevant here. This case involves neither a speculative contingency nor Frank Nitty's future violation of an unchallenged law. Frank Nitty continues to protest. This is not a "'some day' intention[]"; it is a particularized future imminent plan to protest. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563-64 (1992). To the extent that Frank Nitty's claims rely on his future violation of a dispersal order, Frank Nitty is challenging the dispersal order's application to his protest activities. Thus, Frank Nitty does intend to take action that would potentially trigger the challenged governmental action and when he does, he will be subjected to the challenged governmental action, i.e., the unconstitutional use of targeted force to suppress his exercise of his First Amendment rights.

Applied properly, *O'Shea* supports Frank Nitty's standing to bring this claim. *Illinois Migrant Council v. Pilliod*, decided after *O'Shea*, considered individuals subject to unconstitutional searches undertaken as part of a government program. *Illinois Migrant Council v. Pilliod* 540 F.2d 1062 (7th Cir. 1976). "Plaintiffs complain

of repeated actions by INS officials in stopping members of plaintiffs' class without legal cause and in conducting illegal searches and seizures of dwelling places and factories." *Pilliod* at 1067. The *Pilliod* plaintiffs sought injunctive relief in their complaint. The Seventh Circuit Court of Appeals found that "there is clearly a case or controversy." *Id*. "Because plaintiffs have shown a specific pattern of conduct, akin to an explicit policy, <u>they have demonstrated a reasonable likelihood of future harm, justifying their request for injunctive relief</u>." *Id*.

Frank Nitty's claims arise from the same taproot as those at issue in *Pilliod*. A widespread program of unlawful attacks on Frank Nitty's constitutional rights are alleged in his complaint. Frank Nitty will not stop fighting for civil and human rights, and thus faces a continued imposition onto his Constitutional rights via the MCSO's unconstitutional program. Similar to the *Pilliod* plaintiffs, Frank Nitty's requests for injunctive relief do not suffer from the same deficits as the *O'Shea* plaintiffs. His claims should survive.

The concerns over federalism and comity are similarly misplaced. First, the cases upon which Defendants' rely to assert this argument are the same ones they employ to dispute Frank Nitty's standing. As described above, these are factually distinct from the instant matter. This case involves a concrete, as opposed to tenuous relationship with future injury. On careful reading, the litany of cases cited by the Defendants do not forbid injunctive relief here. In *Lyons*, for example, the Supreme Court held that "the need for a proper balance between state and federal authority counsels restraint in the issuance of injunctions against state officers engaged in the

administration of the States' criminal laws <u>in the absence of irreparable injury which is both great and immediate.</u> *Los Angeles v. Lyons*, 461 U.S. 95, 112, 103 S. Ct. 1660, 1670, 75 L.Ed.2d 675, 691 (1983)(emphasis added). The injury here is of course irreparable – an infringement on Frank Nitty's health and First and Fourth Amendment rights cannot be undone by any judgment. He thus faces irreparable, great, and immediate injury in the face of the current operation of the MCSO.

Limiting language of the same vein is found in *Palmer v. Chicago*, 755 F.2d 560 (7th Cir. 1985), another case upon which Defendants rely. The *Palmer* court carved a specific exception applicable in this case:

> The Federal courts have no business whatsoever, meddling in or attempting to control the daily maintenance and administration of the CPD and the Cook County State's Attorney's Office, <u>absent a clear and defined constitutional violation.</u>

*Palmer* at 578 (7th Cir. 1985). Plaintiff's allegations set forth that a massive County program employed military tactics on the streets of Milwaukee to impair Plaintiff's Constitutionally-guarded rights as he attempted to raise his voice as part of the democratic process and Black Lives Matter movement. If this is not a clear and defined constitutional deprivation, what is? Under these egregious circumstances Frank Nitty is certainly well-situated to seek and receive the injunctive relief identified in the Complaint. At the very least, at this preliminary pleadings stage, he has sufficient factual allegations to request the Court to consider relevant injunctive relief.

## CONCLUSION

For the foregoing reasons, the plaintiff respectfully requests that the motions for partial judgment on the pleadings should be denied.[4]

Dated at the law office of GINGRAS THOMSEN & WACHS LLP in Milwaukee, Wisconsin, on this 17th day of November, 2020.

/s/ Mark L. Thomsen
MARK L. THOMSEN
WILLIAM F. SULTON
SCOTT B. THOMPSON

GINGRAS THOMSEN & WACHS LLP
219 N Milwaukee St, Ste 520
Milwaukee, WI 53202
414-778-0700
mthomsen@gtwlawyers.com
wsulton@gtwlawyers.com
sthompson@gtwlawyers.com

*Attorneys for Plaintiff Frank "Nitty" Sensabaugh*

---

[4] Alternatively, pursuant to the parties agreement, (Dkt. 12, p. 3) Frank Nitty will file an amended complaint on or before February 26, 2021.