UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

FRANK "NITTY" SENSABAUGH,

    Plaintiff,

v.                                   Case No. 20-cv-1502

MICHAEL KRZNARICH, et al.

    Defendant.
_____

# DECISION AND ORDER

Plaintiff Frank "Nitty" Sensabaugh brings this action under § 1983 alleging that several members of the Milwaukee County Sheriff's Office's Mobile Response Team violated his constitutional rights by arresting him in retaliation for the exercise of his First Amendment Rights, by unreasonably seizing him and using excessive force under the Fourth Amendment and by violating his rights to equal protection under the Fourteenth Amendment. Plaintiff also asserts a ratification claim against Captain Tricia Carlson of the Milwaukee County Sheriff's Office under the First, Fourth, and Fourteenth Amendments.

On October 26, 2022, I granted defendants' motion for summary judgment and dismissed this case. ECF 45. The clerk entered judgment the same day. ECF 46. Plaintiff has filed a Rule 59(e) motion for reconsideration of my decision and order. ECF 50.

## I. BACKGROUND

Defendants Michael Krznarich, Sarah Byers, Corie Richardson, Brandon Rogers, Daniel Humphreys, and Steven Haw were, at all relevant times, employees of the Milwaukee County Sheriff's Office ("MCSO") and members of the Mobile Response Team ("MRT"), a unit within the MCSO that responds to large public gatherings, demonstrations, and disturbances which disrupt public order. Defendant Tricia Carlson was, at all relevant times, a captain in the MCSO.

The May 25, 2020, killing of George Floyd by police in resulted in widespread protests across this country. Plaintiff, an African American, was participating in such a protest on June 2, 2020, in Milwaukee, Wisconsin. At approximately 6:30 p.m., the demonstration proceeded up an onramp from Clybourn Street onto Interstate 794 and the Hoan Bridge. Plaintiff marched with the demonstration up the onramp. As the demonstrators were marching onto the interstate, the MRT was dispatched to the scene. MRT officers hurried up the ramp and onto I-794 in an attempt to get in front of the demonstration. It is undisputed that plaintiff was shouting to other demonstrators to "fill it in, fill it in," "close it off," and "stay together," though the purpose of these statements is disputed. Defendants claim plaintiff's exclamations led them to believe that plaintiff was ordering the demonstrators to prevent the officers from moving up the ramp, while plaintiff claims he was merely instructing demonstrators to stay together for their safety. A group of demonstrators blocked the path of several MRT officers near the edge of the interstate, resulting in a shoving match between demonstrators and the MRT officers who were attempting to push past the demonstrators. Some demonstrators began throwing water bottles. Plaintiff approached the officers and

2

demonstrators and shouted at the officers "stop." Plaintiff's hand then made contact with defendant Richardson's face shield. The parties dispute whether plaintiff's contact with Richardson was intentional.

Defendant Krznarich testified that he was informed over the radio by the Incident Command Center that the protesters were being led onto the interstate by plaintiff. Krznarich knew who plaintiff was from interactions in other demonstrations that had taken place in the days prior. Once the MRT had reached the front of the protest, an officer ordered the crowd to disperse. MRT officers began firing canisters that emitted green smoke. Some demonstrators threw or kicked the smoke cannisters back at the officers. MRT officers then formed a line in front of the protest and began marching toward the demonstrators, forcing them to move back the way they had come. The protesters moved backward toward the onramp but continued to shout at the officers. Krznarich directed defendant Rogers and defendant Haw to arrest plaintiff. Rogers and Haw rushed forward through the line directly at the plaintiff; they did not announce that he was under arrest or otherwise order him to stop. Rogers tackled plaintiff, who hit the ground hard and landed on broken glass that caused lacerations that later required stitches. Haw helped Rogers hold plaintiff down.

After plaintiff was subdued, the line of MRT officers quickly advanced forward and separated the plaintiff from the rest of the demonstrators. The officers then applied flex cuffs, a form of handcuffs similar to a zip tie, and helped plaintiff to his feet. Plaintiff informed the officers that the handcuffs were extremely tight and causing him pain. The officers replied that they would remove the cuffs and replace them with a new pair once they reached a squad car. After plaintiff was taken to the squad car, his handcuffs were

replaced. The record is unclear on how much time passed before plaintiff's handcuffs were replaced. Defendants claim it was only "a minute or so," but plaintiff described it as "a nice amount of time." After the incident, plaintiff was taken to the hospital where he refused medical treatment.

## II. DISCUSSION

"To prevail on a motion for reconsideration under Rule 59, the movant must present either newly discovered evidence or establish a manifest error of law or fact." *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). A Rule 59(e) motion will succeed only where the movant clearly establishes (1) a manifest error of law or fact, or (2) that newly discovered evidence precludes entry of judgment. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013) (internal quotation marks omitted). Manifest error means a "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (internal quotations omitted). It is not demonstrated merely by the disappointment of the losing party. *Id.* Nor is it a forum to relitigate earlier losing arguments. *Ohr v. Latino Express, Inc.*, 776 F.3d 469, 478 (7th Cir. 2015). Parties may not use a motion for reconsideration to introduce new evidence that could have been presented earlier. *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996). Whether to grant a motion for reconsideration is left solely to my discretion. *Id.* at 1270.

### A. Claim of Genuine Issue of Material Fact

Plaintiff argues that there are genuine issues of material fact that prevent summary judgment on all claims, namely whether defendant Krznarich was actually

4

informed over radio by the Incident Command Center that plaintiff was the one who led protesters onto the interstate. Plaintiff claims this is a disputed proposition, arguing that it cannot be proven by Krznarich's self-serving testimony alone and that defendants have filed no other documentation from the Incident Command Center to prove such. Plaintiff, in essence, requests that I discredit Krznarich's claim because it is wholly contained within his own testimony. This I cannot do.

The Seventh Circuit has made it clear that the term "self-serving" should not be used to "denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment." *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013). The sufficiency of a self-serving statement depends on whether the statement is based on personal knowledge and whether it is grounded in observation as opposed to mere speculation. *Payne v. Pauley,* 337 F.3d 767, 772 (7th Cir.2003). The Seventh Circuit has extended this standard to defendants as well as plaintiffs. *Whitlock v. Brown*, 596 F.3d 406, 411 (7th Cir. 2010) (holding that self-serving deposition testimony may satisfy a defendant's evidentiary burden on summary judgment); *Waldon v. Wal-Mart Stores, Inc., Store No. 1655*, 943 F.3d 818, 823 (7th Cir. 2019) (same). Here, Krznarich testified as to his personal knowledge—that the Incident Command Center informed him that plaintiff had led the protestors onto the interstate. Krznarich was not speculating as to what he was told. As such, it would have been error for me to discredit his testimony. *Whitlock*, 596 F.3d at 411-412.

Plaintiff in his motion cites *Mullin v. Temco Mach., Inc.*, 732 F.3d 772, 779 (7th Cir. 2013), for the principle that "enough inaccuracies regarding a defendant's documentation of an event may allow a jury to make reasonable inferences about

5

credibility," and that "such issues of credibility are not resolved at summary judgment." ECF 50 at 7. But in *Mullin*, the Seventh Circuit reversed the district court's finding of summary judgment due to evidence presented by the plaintiff that conflicted with the testimony presented by the defendant's, thus proving a dispute of fact. 732 F.3d at 779. In this case, plaintiff has presented no evidence contradictory to Krznarich's testimony that he received word from the Incident Command Center that plaintiff had led the protesters onto the interstate aside from the assertion that plaintiff did not in fact do so. Plaintiff also cites *Ortiz v. City of Chicago*, 656 F.3d 523, 532 (7th Cir. 2011), for the principle that the court should "not weigh the credibility of witnesses on summary judgment." ECF 50 at 7. This is true; a court must not consider credibility or weigh conflicting testimony on summary judgment. But the Court of Appeals in *Ortiz* held that a party could not ask the court to not consider the testimony of the other side's witnesses by merely attacking their credibility without any evidence that what they claimed was untrue. 656 F.3d at 532. This is exactly what plaintiff asks me to do, but the law does not allow it.

No evidence has been offered by plaintiff disputing the veracity of Krznarich's testimony. Plaintiff instead provides testimony of witnesses who state that plaintiff was not leading the demonstration and that he was not the one who led them onto the bridge that day. This fact, whether plaintiff actually led the protest onto the interstate, is clearly disputed. However, it is not relevant nor at issue. The issue is what a reasonable officer would have understood based on the undisputed facts available at the time. I need not, and do not, accept as fact whether or not plaintiff led the demonstrators onto the interstate. The testimony cited by plaintiffs stating that plaintiff was not actually the

6

leader of the demonstration does not create a genuine issue of material fact as to whether the Incident Command Center communicated to Krznarich that plaintiff had led the demonstrators that day. Therefore, I must consider Krznarich's testimony that Incident Command Center communicated to officers on the scene that plaintiff was the one who led the protesters onto the interstate as fact in determining what was objectively reasonable under the circumstances.

Plaintiff also misconstrues my decision, quoting my decision as stating that "plaintiff had led the protestors onto the interstate." ECF 50 at 8. However, this quote appears within a sentence containing the legal conclusion that a reasonable officer with knowledge of the undisputed facts could have reasonably concluded that plaintiff had led the protestors onto the interstate. ECF 45 at 6 ("All told, a reasonable officer could have concluded that plaintiff had led protesters onto the interstate, directed them to block the MRT's path, and pushed an officer's face mask while shouting at him."). I reiterate, I need not and do not accept as fact whether plaintiff actually led the demonstrators onto the interstate that day in resolving defendants' motion for summary judgment because the reasonableness of defendants' reliance on the communication from the Incident Command Center does not depend on whether or not it was true.

Lastly, plaintiff argues that Krznarich's credibility is "materially suspect," ECF 50 at 5, such that I cannot rely on his testimony on summary judgment. In support, plaintiff lists several claims made by Krznarich that are either not corroborated by any other witness or have been contradicted by another witness. Plaintiff maintains that Krznarich testified that on plaintiff was swinging a glass water bottle, carrying a backpack full of broken glass, and resisting arrest; these claims were not corroborated by any other

7

defense witness and were contradicted by plaintiff's witnesses. Plaintiff also states that Krznarich testified that defendant Humphreys placed the flex cuffs on plaintiff's wrists and that Humphreys was injured by plaintiff; these claims were contradicted by Humphreys, who stated that he did not put the cuffs on plaintiff and that he was not injured by plaintiff. These facts are disputed. However, they are not relevant to defendant's motion for summary judgment. Nor does the existence of disputed facts lend any credence to plaintiff's claim that Krznarich is unreliable. The challenging of a witness' credibility is not alone enough to avoid summary judgment. *Dugan v. Smerwick Sewerage Co.*, 142 F.3d 398, 406 (7th Cir. 1998). "[W]hen challenges to witness' credibility are *all* that a plaintiff relies on, and he has shown no independent facts—no proof—to support his claims, summary judgment in favor of the defendant is proper." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (emphasis in original).

Nevertheless, plaintiff failed to raise the argument that Krznarich's credibility prevented me from relying on his testimony as to whether or not he received the communication from the Incident Command Center on summary judgment. As a result, I may not now consider this argument on a motion for reconsideration. *Caisse Nationale de Credit Agricole*, 90 F.3d at 1270; *Bally Exp. Corp. v. Balicar, Ltd.*, 804 F.2d 398, 404 (7th Cir. 1986); *Laserage Tech. Corp. v. Laserage Lab'ys, Inc.*, 972 F.2d 799, 804 (7th Cir. 1992) (raising an argument for the first time in a motion for reconsideration "is too little, too late.").

As such, plaintiff has not shown any manifest error of law or fact in my determination that there is no genuine issue of material fact as to whether Krznarich

8

Case 2:20-cv-01502-LA   Filed 09/05/23   Page 8 of 14   Document 55

was informed by the Incident Command Center that plaintiff led the demonstrators onto the interstate.

### B. Claim of Error as to Plaintiff's Excessive Force Claim

Plaintiff argues that my order granting summary judgment for defendants misconstrues the excessive force claim, resulting in manifest error. Plaintiff argues that the facts viewed in the light most favorably to him as the non-moving party preclude summary judgment on excessive force. Plaintiff cites facts such as plaintiff's efforts to de-escalate the conflict, that officers did not say anything to plaintiff, ask him to stop, grab his arm, or ask him to turn around, the force with which plaintiff was tackled, the severity of the lacerations received, and that plaintiff was not resisting arrest. Plaintiff claims I did not consider these facts in assessing his excessive force claim. This is not the case.

In determining whether the force used was reasonable under the Fourth Amendment, I considered the factors spelled out by the Supreme Court in *Graham v. Connor*. 490 U.S. 386, 396 (1989) ("proper application [of the Fourth Amendment reasonableness test] requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."). I found that "[a]lthough the severity of the crime at issue and whether the individual is resisting arrest are relevant considerations, they do not outweigh the other circumstances in this case." ECF 45 at 8. I reiterated the danger that the situation posed to officers, demonstrators, and the general public due to the presence of demonstrators on the interstate. In

9

Case 2:20-cv-01502-LA    Filed 09/05/23    Page 9 of 14    Document 55

"balancing of the nature and quality of the intrusion on [an] individual's Fourth Amendment interests against the countervailing governmental interests at stake," *Graham*, 490 U.S. at 396, I found the officers' interest in defusing the volatile situation to be strong. I gave defendant officers "considerable leeway" regarding the degree of force appropriate due to the dangerous situation posed. *Abbott v. Sangamon Cnty.*, Ill., 705 F.3d 706, 725 (7th Cir. 2013). As previously stated in my order, at the time of plaintiff's arrest:

> [H]undreds of demonstrators had entered the interstate creating a situation that was dangerous to demonstrators, to commuters, and the police. The officers heard plaintiff order the demonstrators to "fill it in" and "close it off," orders which were quickly followed by a shoving match between demonstrators and police. The crowd was unruly and several confrontations with officers had already occurred; some of the demonstrators were throwing water bottles at the police and kicking smoke cannisters toward them. The officers witnessed plaintiff shouting "stop" at a group of officers and pushing Richardson's face shield. They had also been advised that plaintiff was leading the demonstrators and had directed them onto the interstate. The situation was volatile, with demonstrators shouting at the advancing officers. In addition, the officers had reason to believe that plaintiff was willing and able to incite the crowd to interfere with their efforts to move the demonstrators off the interstate. The officers were outnumbered and faced a dangerous and fluid situation that they reasonably believed might escalate.

ECF 45 at 8-9. These facts relevant to the officers' perception of the circumstances—that demonstrators were on the interstate in conflict with police, that Incident Command Center had informed them that plaintiff was leading the demonstrators, that plaintiff was shouting "fill it in" and "close it off", at other demonstrators, and that plaintiff yelled "stop" at Richardson whilst his hand made contact with Richardson's face shield—are all undisputed. My determination of reasonableness is not inconsistent with plaintiff's claim that he was attempting to de-

10

Case 2:20-cv-01502-LA    Filed 09/05/23    Page 10 of 14    Document 55

escalate the situation at the time of arrest. Regardless of whether plaintiff's claim is true, what defendants observed him doing in furtherance of this goal supported the officers' belief that plaintiff was directing the crowd. Nor is it inconsistent with plaintiff's claim that the defendants' takedown of the plaintiff was effectuated with considerable force. The Seventh Circuit has upheld the use of a tackle takedown to end mild resistance. *Johnson v. Rogers*, 944 F.3d 966, 969 (7th Cir. 2019).

I also directly addressed in my decision plaintiff's claim of the severity of his injuries caused by the broken glass. As there was "no evidence that Rogers and Haw knew that there was broken glass on the interstate," ECF 45 at 9, the reasonableness of the forced used does not depend on injuries caused by the presence of the glass on the ground. In determining whether force is excessive under the Fourth Amendment, the question is "whether the force used is reasonable, not whether things turned out badly." *Johnson*, 944 F.3d at 969. Plaintiff also argues that the force used is excessive considering it was for "a minor rule of the road violation." ECF 50 at 2. Though violation of being a pedestrian on a highway contrary to Wis. Stat. §346.16(2)(a) is the only offense that plaintiff was ever charged for, defendants also at the time had probable cause to arrest plaintiff for unlawful assembly and disorderly conduct. Plaintiff has not shown any manifest error of fact or law in my determination that based on the totality of the circumstances defendants Rogers and Haw use of force was reasonable.

**C. Claim of Error as to Application of Qualified Immunity**

Plaintiff takes issue with my ruling that defendants Rogers and Haw are regardless protected by qualified immunity, claiming that it is based "on the erroneous factual proposition that Officers Rogers and Haw reasonably believed plaintiff had led

11

hundreds of demonstrators onto the interstate and had directed them to interfere with the police." ECF 50 at 4. However, the defendants' "reasonable belief" is not itself a fact to be proved, but a legal conclusion within the objective reasonableness standard required in assessing Fourth Amendment excessive force claims. *See Graham*, 490 U.S. at 397 ("[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."). As previously discussed, my finding that the defendants' belief that plaintiff had led hundreds of demonstrators onto the interstate and that plaintiff had directed them to interfere with the police was objectively reasonable based on the undisputed facts in the record. I make no finding as to whether or not plaintiff actually did lead the demonstration that day, but merely what a reasonable officer in the position of defendants could have concluded.

Qualified immunity attaches when an official's conduct does not violate the clearly established constitutional rights of which a reasonable officer would have known. *White v. Pauly*, 580 U.S. 73, 137 (2017). To defeat qualified immunity, plaintiff must show that he was deprived of a constitutional right that was "clearly established at the time and under the circumstances presented." *Bianchi v. McQueen*, 818 F.3d. 309, 317 (7th Cir. 2017). To do so, plaintiff must provide "either a reasonably analogous case that has both articulated the right at issue and applied it to a factual circumstance similar to the one at hand or that the violation was so obvious that a reasonable person would have recognized it as a violation of the law." *Canen v. Chapman*, 847 F.3d 407, 412 (7th Cir. 2017) (quoting *Chan v. Wodnicki*, 123 F.3d 1005, 1008 (7th Cir. 1997)). When there is not precedent directly on point, the precedent relied on by plaintiff must place the

constitutional question "beyond debate." *Dockery v. Blackburn*, 911 F.3d 458, 468 (7th Cir. 2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 2083, (2011)).

The Supreme Court has held that the clearly established right must be defined with specificity, and "has repeatedly told courts ... not to define clearly established law at a high level of generality." *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019) (per curium) (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018)). "Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Kisela*, 138 S. Ct. at 1153. It would be error for me to find that the general "right to be free of excessive force" is clearly established law for the purposes of qualified immunity. *Emmons*, 139 S. Ct. at 503; *Johnson*, 944 F.3d at 969 ("The principle 'do not use excessive force' is clearly established but does not tell an officer what kinds of force, in which situations, are excessive and therefore does not negate immunity.").

Plaintiff bears the burden of establishing the existence of the clearly established right violated. *Cibulka v. City of Madison*, 992 F.3d 633, 640 (7th Cir. 2021); *Marshall v. Allen*, 984 F.2d 787, 797 (7th Cir. 1993) ("[O]nce a defendant claims qualified immunity, the burden is on the plaintiff to show that the right claimed to have been violated was clearly established."). Plaintiff has failed to meet his burden of demonstrating a clearly established right violated by defendants. In both this motion and in his opposition to summary judgment, plaintiff cited no controlling decision, nor am I aware of any, demonstrating that their actions were a clearly established violation or that would have

given defendants fair warning that their actions were unconstitutional. Nor has plaintiff demonstrated that defendants' conduct was beyond debate so obviously a violation that any reasonable person would consider it a violation of plaintiff's constitutional rights. Plaintiff has not shown any manifest error of law or fact in my determination that defendants Rogers and Haw are entitled to qualified immunity.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that plaintiff's motion for reconsideration at ECF no. 50 is **DENIED**.

Dated at Milwaukee, Wisconsin, this 5th day of September, 2023.

/s/ Lynn Adelman
LYNN ADELMAN
United States District Judge